[Civ. No. 5562. First Appellate District, Division Two.—May 24, 1926.]

# MILTON K. YOUNG et al., Respondents, v. CHARLES O. BRUERE, Sr., et al., Appellants.

[1] ATTORNEY AND CLIENT—PERFORMANCE OF LEGAL SERVICES—IMPLIED PROMISE TO PAY.—Where legal services are actually performed with the knowledge and consent of the other party and not as a gratuity, a promise will be implied to pay for the benefits actually received; and the absence of an express promise on a client's part to pay will not prejudice recovery, if the employment is fairly made out from all the attendant circumstances.

[2] ID. — ACQUIESCENCE IN ATTORNEY'S CONDUCT. — Acquiescence by a client in his attorney's conduct may supply the place of a request to act, provided the case was such that the client might reasonably know that he would be expected to pay for the service.

[3] ID. — PERFORMANCE OF USEFUL SERVICE — KNOWLEDGE — IMPLIED PROMISE TO PAY.—Where one performs for another, with the other's knowledge, a useful service of a character usually charged for, and the latter expresses no dissent, or avails himself of the service, a promise to pay the reasonable value of the services is implied.

[4] ID.—ACTION TO RECOVER FOR LEGAL SERVICES—FINDINGS—EVIDENCE. In this action to recover for legal services performed by plaintiffs for defendants and for which they impliedly agreed to pay, the trial court's finding with reference to defendants' liability was supported by the evidence showing that the services were performed in connection with certain property in an estate in which defendants were jointly interested, that defendants took an active part in the conferences and the court proceedings and furnished money to pay a third person for making a higher bid for the property, that defendants were jointly interested with the executor of said estate and consulted with plaintiffs about the matter in its various stages, and that when the purchaser at a probate sale of the property appealed from an order of the probate court setting aside the confirmation of the sale, defendants did not wish to pay legal fees to defend such order upon appeal, but they expressly agreed to negotiate for a compromise and led plaintiffs to believe that plain-

1. See 3 Cal. Jur. 698; 2 R. C. L. 1046, 1048.
3. See 6 Cal. Jur. 23.

tiffs' negotiations to that end were on defendants' behalf, and defendants confirmed this impression by furnishing money for the compromise and signing the agreement evidencing it.

(1) 6 C. J., p. 730, n. 67, 68, p. 747, n. 89, p. 748, n. 17, p. 759, n. 76.   (2) 6 C. J., p. 730, n. 69.   (3) 40 Cyc., p. 2808, n. 8.   (4) 40 Cyc., p. 2808, n. 9.

APPEAL from a judgment of the Superior Court of Los Angeles County. F. M. Jamison, Judge. Affirmed.

The facts are stated in the opinion of the court.

William K. Young, E. H. Mitchell and L. R. Brigham for Appellants.

Haas & Dunnigan for Respondents.

LANGDON, P. J.—This appeal is by the defendants from a judgment against them for $1,000 in an action to recover for legal services alleged to have been rendered at the special instance and request of the defendant. This theory was abandoned later, and it is contended by respondents upon appeal that the conduct of appellants, as disclosed by the record, shows their employment of plaintiffs and their implied agreement to pay for services rendered.

The appellants, on the other hand, contend that there is no warrant in the evidence for the finding of the court that they agreed to pay plaintiffs the reasonable value of their services upon demand. This controversy about the facts presents the only problem upon appeal. The evidence, stated most strongly for the respondents, is about as follows: In the year 1922, the plaintiff was the legal representative of John C. Alstrom in his official capacity as administrator of the estate of his deceased son, John Bruere Alstrom. This estate was being probated in Los Angeles County and was entitled to one-half the assets of the estate of Julia Bruere, deceased, then in process of administration. The defendants in the present action, Charles O. Bruere and Charles O. Bruere, Jr., were also entitled to participate in the distribution of the property of the said estate of Julia Bruere, deceased.

In August, 1922, certain real property belonging to the estate of Julia Bruere, deceased, was sold to Mrs. M. K. Bennett for the sum of $27,500. In the fall of 1922, plaintiff instituted proceedings upon behalf of John C. Alstrom, administrator of the estate of John Bruere Alstrom, deceased, to have the said sale of the property of the Julia Bruere estate set aside upon the ground that the consideration was inadequate. This motion was denied by the superior court and the sale confirmed. While this matter was pending defendant Charles O. Bruere, Sr., was in communication with plaintiff and interested in the proceedings which affected his interests as well as those of Alstrom.

After the denial of this motion the Title Insurance Company communicated with plaintiff and stated that it would not pass the title to the property sold to Mrs. Bennett because more than a year had elapsed between the time of sale and the filing of an inventory in the estate. Mr. Young then had a telephone conversation with defendant Bruere, Sr., in which he told him of the report of the title company and also told him that he, Mr. Young, was going to make a motion to set aside the confirmation of the sale. Mr. Young then prepared the necessary papers for his motion and it was made in the name of John C. Alstrom, administrator of the estate of John Bruere Alstrom, deceased.

On or about January 18, 1923, when this second motion was to be heard in the superior court, Mr. Bruere appeared there, where he met Mr. Young. The motion was continued for one day and on the following day Mr. Young met defendants down-town and they went with him to the superior court. On the way the motion was discussed by Mr. Young, who stated that it would be advisable to have another bid made for the property in excess of the amount for which it had previously been sold, and also stated that he had induced a friend of his to make a written bid of $31,500. Mr. Young secured a certified check for $3,150 to be offered to the court in the event this bid was accepted. Upon the hearing the matter was taken under submission and later the confirmation of the sale was set aside.

After the hearing of this motion Mr. Young left the courtroom with Mr. Alstrom and defendants and they had a conversation relative to the certified check for $3,150. Mr.

Young stated that since this bid had not been accepted he would return the check to the bidder, Mr. Bush, and that since Mr. Bush had furnished the $3,150 necessary to make the bid, he was entitled to some remuneration. One of the persons present suggested that it would be proper to give Mr. Bush $50. Defendant, Bruere, Sr., told Mr. Alstrom to give Mr. Young $50 and he would return him $25 of this amount when he got the money, thus accepting and recognizing his responsibility in the matter. Mr. Alstrom, accordingly, gave Mr. Young $50 with which to compensate Mr. Bush. Subsequent to this time Mr. Young saw the defendants "off and on." Mrs. Bennett, the purchaser of the property from the estate of Julia Bruere, deceased, perfected an appeal from the order setting aside the confirmation of the sale. With relation to this appeal Mr. Young had a talk with Mr. Bruere and Mr. Alstrom in his office. There was a discussion about the cost of preparing briefs on appeal, etc. Mr. Bruere then stated that he would not stand in the way of an appeal, but that he did not wish to pay for an appeal to the supreme court. Mr. Young advised him to contest the appeal and gave his opinion that the judgment of the lower court would be affirmed. One of the persons present asked what Mr. Young's fee would be and in reply to this question Mr. Young stated that his father would have to fix the fee and as he was not in town Mr. Young, Jr., was not prepared to state the fee.

After this conversation plaintiff had several conferences with the attorney for Mrs. Bennett, the purchaser, with reference to a compromise of the controversy and the dismissal of her appeal from the order setting aside the confirmation of the sale. In connection with this compromise, Mr. Alstrom and Mr. Bruere came to Mr. Young's office on March 28, 1923. He told them of his conferences with reference to a settlement and that Mrs. Bennett would accept $2,000 for a quitclaim deed and release of all her interest in the property and dismiss her appeal, and he advised the persons interested in the estate of Julia Bruere to pay this amount to Mrs. Bennett and reimburse themselves from the increased price they would get from the property. "Mr. Bruere thought the idea was all right. I told him to go and get the money. . . . The next morning he

came into the office and said they wanted to go through with it and Mr. Bruere, Jr., and Mr. Bruere, Sr., and Mr. Alstrom came into my office the next morning, March 29, 1923. I told them to go over to the executor of the estate of Julia Bruere . . . and get the necessary documents from the estate that they were heirs to and bring it back to the office and I would put the deal through. They left the office and came back in half an hour and Mr. Alstrom had a check for $750 and Mr. Bruere, Jr., had a check for $375, and Mr. Bruere, Sr., for $375, which was—they explained that they did not have the additional five hundred to make up the necessary $2,000 to put over the compromise, that there wasn't enough cash in the estate, and they endorsed the checks over to me and told me to put it in my account and make the deal and I said, 'What about the extra $500?' And Mr. Alstrom said, 'I will put up the extra $500, and the Brueres can give me their note or pay me back for their share.' Mr. Alstrom put up his check for $500, which made the sum of $2,000, and I prepared a note for the sum of $275, which was $250, being one-half of the advancement of $500 by Alstrom made on their behalf and $25 in addition, being one-half of the amount Mr. Alstrom paid me for Mr. Bush for putting up that money to make that bid down there, his proportion of the $50 we paid Mr. Bush. So I made out the note for $275 and Mr. Bruere signed it, and they told me to sign the contract for settlement and put the deal over. I said 'All right,' ''

Mr. Young then prepared the agreement of compromise. With relation to it Mr. Young stated that he was told to prepare this agreement in the presence of the two defendants and Mr. Alstrom and that one of the three instructed him to prepare the instrument and the others "acquiesced in it." The instrument was signed by the defendants and Mr. Alstrom.

There is no question about the liability of Mr. Alstrom for legal services rendered on his behalf, and he paid defendants $2,000 therefor and judgment was accordingly entered in his favor. We are not concerned with his liability upon this appeal. The question presented is as to the liability of defendants Bruere. As against them, the foregoing is the substance of the evidence in favor of plaintiffs'

case. We think that such evidence supports the finding of the trial court with reference to defendants' liability. [1] Where legal services are actually performed with the knowledge and consent of the other party and not as a gratuity, a promise will be implied to pay for the benefits actually received. (2 R. C. L. 1046, 1048.) "The absence of an express promise on a client's part to pay will not, however, prejudice recovery, if the employment is fairly made out from all the attendant circumstances. Acts of recognition or acceptance are in general equivalent to a prior engagement. [2] Thus acquiescence by a client in his attorney's conduct may supply the place of a request to act, provided the case was such that the client might reasonably know that he would be expected to pay for the service." (6 Cor. Jur. 730, 731.) [3] Where one performs for another, with the other's knowledge, a useful service of a character usually charged for, and the latter expresses no dissent, or avails himself of the service, a promise to pay the reasonable value of the services is implied. (6 Cal. Jur. 23; *Semi-Tropical etc. Assn.* v. *Johnson,* 163 Cal. 639, 642 [126 Pac. 488]; *Pixley* v. *Western Pac. R. R. Co.,* 33 Cal. 183 [91 Am. Dec. 623].)

In the several cases relied upon by appellants in support of their position the facts are distinguishable from those in the instant case. In the case of *Chicago etc. R. R. Co.* v. *Larned,* 26 Ill. 218, the parties sought to be charged had "sat quietly by" and allowed the attorney to conduct a case in which they were jointly interested. [4] In the instant case the defendants took an active part in the conferences and the court proceedings and furnished money to pay Mr. Bush for making a higher bid for the property. They were jointly interested with Mr. Alstrom and they consulted with the attorney about the matter in its various stages. When Mrs. Bennett appealed from the order setting aside the sale, defendants did not wish to pay legal fees to defend this order upon appeal, but they expressly agreed to negotiate for a compromise and led the attorney to believe that his negotiations to that end were on their behalf. They confirmed this impression by furnishing money for the compromise and signing the agreement evidencing it.

As said in the case of *Davis* v. *Trimble et al.*, 76 Ark. 115 [88 S. W. 920], relied upon by appellants, "Each case must stand upon its own peculiar facts."

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.