[Civ. No. 11552. First Appellate District, Division Two.—January 27, 1941.]

J. C. WILLIAMSON et al., Appellants, v. LOS ANGELES COUNTY FLOOD CONTROL DISTRICT, Respondent.

E. D. Martindale, *in pro. per.*, Frederick W. Heath and Charles E. McGinnis for Appellants.

J. H. O'Connor, County Counsel, S. V. O. Prichard, Assistant County Counsel, and A. Curtis Smith, Deputy County Counsel, for Respondent.

STURTEVANT, J.—This is an appeal by the plaintiffs from a judgment of nonsuit entered upon motion of the defendant made at the conclusion of the plaintiffs' affirmative case. The plaintiffs are seeking by this action to recover from a political entity, a flood control district, for attorneys' fees and expenses claimed to have been earned or incurred by them in certain so-called "taxpayers' suits".

On December 7, 1928, the District entered into a contract for the construction of a concrete dam across San Gabriel Canyon. The contractors entered upon the performance of the contract and excavated large quantities of material from the damsite for which they were paid progress payments aggregating $1,831,312.80. In October, 1929, acting pursuant to the Dam Act which became effective on August 15, 1929, the state engineer examined and condemned the damsite. A dispute arose between the contracting parties as to their respective rights under the contract of December 7, 1928. The contractors filed a claim for $4,290,459.20, representing their view of the matter, and on February 3, 1930, a compromise was made by the partial allowance of the claim to the extent of $737,986.90 and the purchase from the contractors of certain personal property left at the damsite for $92,779. In executing this compromise the contractors were given a full and complete release of all liability.

In the making of this contract of compromise one of the supervisors of the district was "interested" in violation of section 920 of the Political Code and section 71 of the Penal Code. The "interest" of the supervisor was bribery, a fact which was not known to the district until February 6, 1933, at which time the supervisor was indicted by the grand jury. The "taxpayer plaintiffs" were likewise ignorant of the bribery until the time of the indictment.

On August 5, 1930, Mr. Shorb, one of the "taxpayer plaintiffs", filed the first of the "taxpayers' suits" here involved. That case is No. 306952. The original complaint sets forth a

simple cause of action for money had and received for $737,986.90 against the dam contractors. The amended complaint assailed the original contract of December 7, 1928, as fraudulent and the compromise contract as ill-advised. In neither complaint was any showing made to justify a collateral attack upon the *quasi*-judicial action of the board of supervisors in partly allowing the claim of the contractors as required by such cases as *County of Alameda* v. *Evers,* 136 Cal. 132 [68 Pac. 475]; *McFarland* v. *McCowen,* 98 Cal. 329 [33 Pac. 113]; *Eldorado County* v. *Elstner,* 18 Cal. 144; *Andrews* v. *Pratt,* 44 Cal. 309. This "taxpayer's suit" was brought on behalf of the taxpayers of Los Angeles County, and not on behalf of the taxpayers of the flood control district. In bringing said suit no demand upon the board of supervisors or any officer or agent of the district was ever made. The action was voluntarily dismissed by the "taxpayer plaintiff" on June 19, 1931. By this action the plaintiff recovered nothing for the district.

Within a few days after the voluntary dismissal of this first "taxpayer's suit" Mr. Shorb, one of the "taxpayers plaintiffs", filed the second suit, No. 323822. In this suit the "taxpayer plaintiff" sought to set up a cause of action upon the theory that the original contract of December 7, 1928, had been procured by fraud. Again no attempt was made to attack directly the *quasi*-judicial action of the board of supervisors in making a settlement with the contractors and giving to them a full and complete release.

The complaint was demurred to and the demurrer sustained. The plaintiff failed, however, to amend within the time allowed by the court, and judgment was entered dismissing the action as to all defendants but one, C. R. Ross, and the district. A stipulation for the dismissal of the action as against the district was later filed on October 28, 1932. Nothing was recovered for the district.

On February 6, 1933, the supervisor who was bribed in connection with the settlement was indicted by the grand jury. On April 20, 1933, Mr. Williamson, one of the plaintiffs, made demand on the supervisors that a suit be commenced. On May 15, 1933, about three weeks later, the board of supervisors instructed the county counsel to file a civil action to set aside the said settlement. On June 12th the board employed special counsel to assist in the prosecution

of the action authorized on May 15th. The grand jury completed its investigation on September 7, 1933, and by an extended resolution directed a suit to be brought pursuant to the provisions of section 929 of the Penal Code. On September 21st the board of supervisors authorized the same suit and appropriated $25,000 for its maintenance. On the same day suit was filed, No. 363102, and was prosecuted by the district to a successful conclusion. On July 13, 1936, three years after commencement, the sum of $737,986.90 in cash was collected upon compromise of the litigation. The action was most vigorously contested. The district bore the entire expense and burden of the prosecution at an outlay of upwards of $75,000.

To return, however, to the situation in 1933—on June 1, 1933, fifteen days after the board had authorized suit ''to set aside the said settlement'' and while the grand jury was still investigating the matter, Mr. Williamson, without presenting any further demand, filed the third ''taxpayer's suit'', No. 357986. On December 28, 1933, two other taxpayers who are not joined as parties plaintiff in this present suit although their counsel are so joined, filed a complaint in intervention. On October 10, 1934, Mr. Williamson filed an amended complaint. Other than filing these complaints no steps were taken by the ''taxpayer plaintiffs'' or their counsel to prosecute this action. On April 12, 1935, the action was voluntarily dismissed by the plaintiff and on July 13, 1936, it was dismissed by the court as to the interveners for lack of prosecution.

With reference to this third ''taxpayer's suit'' it will be noted (1) it was dismissed in the manner just indicated; (2) nothing was recovered by it for the district; (3) the action was never prosecuted beyond the filing of the complaint; (4) there was no refusal on the part of the District to bring an action. The ''taxpayer's suit'' was filed in the midst of diligent preparation on the part of public officials to proceed with their suit.

In the present suit Williamson and Shorb, as taxpayers, and Martindale, Phillips, Park, Cavaney, McGee and Robnett, as attorneys, all joined as plaintiffs seeking to recover attorneys' fees and expenses incurred in the three ''taxpayers' suits'', in no one of which was any recovery had. All of the suits were dismissed either voluntarily or for lack of prose-

cution. There is no evidence that any one of these suits, or all of them together, contributed in any way to the ultimate recovery which was accomplished in case No. 363102. In that action no one of the plaintiffs in this action asked an allowance for attorney fees or expenses incurred in any of the other actions specifically designated above.

The plaintiffs inserted in their complaint ten separate counts. In presenting their cause they rely on any one of three different theories.

■ They contend that under the facts they had an express contract. But, a most careful examination of the record discloses no facts that will support that contention. The power to make a contract, for the county, on the subjects discussed, rested with the board of supervisors of Los Angeles County. (Pol. Code, sec. 4001.) The same power, as to the affairs of a flood control district, rests with the board of supervisors of the district. (Stats. 1915, p. 1503, sec. 3 [Deering's Gen. Laws, 1937, Act 4463].) The board of supervisors can act in such matters only by resolution or ordinance duly adopted. The record does not disclose the adoption of any resolution or ordinance. (Pol. Code, sec. 4039.) And, if a resolution is relied on it must further appear that "a majority of all the members concur therein." (Pol. Code, sec. 4031.) No such facts are contained in the record. Therefore there was no evidence of the "minds" of the members of the board of supervisors. It is equally true there was no evidence of the mind of any one, or all, of the plaintiffs on the subject of the payment of costs and attorney fees by the defendant. Obviously under these circumstances the consent of each party was not "communicated by each to the other", but that was one of the essential elements to constitute the making of an express contract. (Civ. Code, sec. 1565.) It follows that no express contract existed. (*Nevills* v. *Moore Min. Co.*, 135 Cal. 561, 563 [67 Pac. 1054].) That conclusion is particularly applicable in actions brought against public boards and officers. (*Von Schmidt* v. *Widber*, 105 Cal. 151, 157 [38 Pac. 682].)

■ Not waiving the contention that they held an express contract, the plaintiffs next assert that they had an implied contract. They cite and rely on *Young* v. *Bruere*, 78 Cal. App. 127 [248 Pac. 301], *Contra Costa Water Co.* v. *Breed*, 139 Cal. 432 [73 Pac. 189], *Brown* v. *Board of Education*,

103 Cal. 531 [37 Pac. 503] , and *Higgins* v. *San Diego Water Co.,* 118 Cal. 524 [45 Pac. 824, 50 Pac. 670]. The facts in each of those cases were in no respect similar to the facts in this case and those cases are not in point even as a matter of argument. The contention which these plaintiffs make was made before the Supreme Court of South Carolina in the case of *Park* v. *City of Laurens,* 68 S. C. 212 [46 S. E. 1012]. On page 1014 that court said: ''When municipal officers refuse to perform their plain ministerial duty, any citizen interested is allowed to put the machinery of the courts in motion to require the performance of such duty, because of his own interest in its performance; but it would be stretching the doctrine of representation very far to hold that in such case he was the representative, agent, or trustee of the corporation, in the sense that his attorney could bring a direct action against the city for his services. . . . The sole question we are called upon to decide in this case is whether the conduct of this litigation by the plaintiff under contract with Mr. Garrison implied a contract between the city and the plaintiff upon which he could bring a direct action. We are obliged to hold that there was no privity of contract between the city and the plaintiff, and therefore the action cannot be sustained.'' That in such actions the plaintiff is bound to show that ''privity of contract'' existed between the plaintiff and the defendant, clearly appears from the leading case entitled *Woods* v. *Ayres,* 39 Mich. 345 [33 Am. Rep. 396]. That case is a very complete exposition of the law as to when an implied contract arises. It was recently cited and followed in *Baltimore & Ohio R. Co.* v. *United States,* 261 U. S. 592, 593 [43 Sup. Ct. 425, 67 L. Ed. 816]. The facts in *Coleman* v. *United States,* 152 U. S. 96 [14 Sup. Ct. 473, 38 L. Ed. 368], were far more favorable to the plaintiff than the facts in the instant case. Coleman was appointed by the attorney-general of the United States to maintain actions against Maxwell Land Grant Company to have certain patents canceled, to a large tract of land, to a part of which Coleman's clients claimed title and to the balance of which the United States claimed title. The action was commenced and carried on for a while. Later Coleman commenced an action against the United States in the court of claims to recover for services rendered and expenditures made on an alleged implied con-

tract. The court of claims ruled against him. He took an appeal. Having stated that under certain circumstances a liability on an implied contract could arise against the federal government, the court said: "But we think that a promise to pay for services can only be implied when the court can see that they were rendered in such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party benefited. . . . For their past services they are entitled to recover from the settlers who employed them, but the admitted facts clearly show that the United States are under no express or implied obligation to answer for a breach of contract between the appellants and their clients." The case of *Baltimore & Ohio R. Co.* v. *United States, supra,* was also based on facts more favorable to the plaintiff than the facts in the instant case. There the plaintiff provided quarters for federal troops who were guarding the property of the plaintiff and adjoining property of the government. The court carefully analyzed the facts and reached the conclusion that neither an express nor an implied contract was shown.

Nor were the plaintiffs entitled to recover under any trust theory. It will be remembered that they did not appear in action No. 363102, the action brought by the district and in which the fund, $737,986.90, was recovered. In that action they made no application to be reimbursed. In that action the claim to be reimbursed might have had some merit when the court had actual charge of the fund. But in the present action the court had no charge whatever of the fund. That a court of equity having possession of a fund may in certain instances allow an attorney fee and costs is settled law. The instances in which that may be done are quite fully set forth in *County of Tulare* v. *City of Dinuba,* 205 Cal. 111, 117, 118 [270 Pac. 201]. The same doctrine has been declared in many well considered cases. (*State* v. *Andrews,* 131 Tenn. 554 [175 S. W. 563]; *Hempstead* v. *Meadville Theological School,* 286 Pa. 493 [134 Atl. 103, 49 A. L. R. 1145].) But no authority has been cited to us and we know of none that holds the facts contained in this record would constitute an action in equity against the defendant district.

It follows that the plaintiffs were not entitled to recover on any theory which they advance. Having reached these

conclusions it is unnecessary to discuss other points presented in the briefs.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 28, 1941. Spence, J., *pro tem.*, took no part in the consideration or decision of this matter.