[Civ. No. 20092.   First Dist., Div. Two.   May 23, 1962.]

THE PEOPLE ex rel. DEPARTMENT OF NATURAL RE-
SOURCES, Plaintiff and Appellant, v. O'CONNELL
BROTHERS, Defendant and Respondent.

Stanley Mosk, Attorney General, Ralph W. Scott and Robert L. Bergman, Deputy Attorneys General, for Plaintiff and Appellant.

Rankin, Oneal, Luckhardt & Center, Foley & Foley, Burnett, Burnett & Somers and John M. Burnett for Defendant and Respondent.

AGEE, J.—Plaintiff appeals from a judgment which denied it the right to condemn certain real property on the ground that there was no public necessity for such acquisition and the proposed improvement (public park) was not planned or located in a manner most compatible with the greatest public good and the least private injury.

The property consists of approximately 500 acres of ranch land belonging to respondent. Prior to the commencement of the action, the Director of Natural Resources (since changed to "Director of Parks and Recreation") issued a declaration declaring that public interest and necessity required acquisition by the state of the property and that such acquisition was necessary and proper for the extension, improvement and development of the State Park System; that said development is planned and located in a manner which will be most compatible with the greatest public good and the least private injury. (Pub. Resources, Code §§ 5006, 5006.1.)

The complaint alleges and the answer denies that the matters stated in the declaration are true. The pretrial statement

filed by plaintiff dated August 24, 1960, demonstrates its awareness of the necessity issue, as follows: ''The defendant, O'Connell Bros., a corporation, filed an answer raising a jurisdictional question as to the necessity of acquisition of the subject property for park purposes.'' This issue was included in the pretrial order, dated August 30, 1960. The case went to trial on November 16, 1960.

Since all issues of fact except those relating to compensation were to be tried and determined by the court (*People* v. *Ricciardi*, 23 Cal.2d 390, 402 [144 P.2d 799]) the issue of necessity was agreed to be tried first. A finding on this issue adverse to plaintiff would, of course, be determinative of the entire action. However, as a convenience, a jury was selected and allowed to listen to the evidence on this subject.

When both sides had rested as to this issue and it was submitted for decision, the court resolved such issue adversely to plaintiff and dismissed the jury. It later signed findings of fact and conclusions of law and a judgment in accordance therewith.

Plaintiff contends that what the court actually did was to grant a nonsuit. If this is so, we must draw all reasonable inferences from the evidence that are favorable to the plaintiff and reject those that are unfavorable.[1] On the other hand, if the necessity issue was submitted to the court by both parties for its decision on the merits, then our inquiry is whether there is sufficient evidence to support the findings of fact and the judgment based thereon.

DID THE COURT GRANT A NONSUIT OR RENDER JUDGMENT
AFTER WEIGHING THE EVIDENCE?

At the outset of the trial, plaintiff's counsel stated that he would reserve an opening statement to the jury until the valuation phase was reached, which we interpret to mean after the issue as to public necessity was determined. He then introduced into evidence the declaration of the director and called two witnesses. The first witness identified the property sought to be taken and some of its physical characteristics but gave no testimony as to the necessity of the taking. The second witness, Knight, gave certain testimony that was damaging to plaintiff on the issue then being tried. At the con-

---

[1]This is no longer the rule. Effective September 15, 1961, section 631.8 of the Code of Civil Procedure provides that in a trial by the court, the court ''shall weigh the evidence'' when determining a motion for judgment in defendant's favor at the close of plaintiff's case.

clusion of his testimony, the court said: "Gentlemen, let me ask you this: And perhaps I should direct this question to you, Mr. Burnett. [Defendant's attorney] Are we at a point, now, where you feel the Court may make a ruling on the first phase of this case? That is, whether or not the State has a right to take it? MR. BURNETT: Well, if Mr. Scott [plaintiff's attorney] is through, *I have no evidence to offer on whether the State has the right to take it or not.* MR. SCOTT: Well, we were through, Your Honor. As far as we were concerned, we offer the Declaration and— THE COURT: All right. *That matter will be resolved"* (emphasis ours). Apparently sensing that the court's resolution of the necessity issue might be adverse, Mr. Scott then stated: "But I think as long as the objection has been made so firmly, possibly we should call somebody from the Park and Recreation Department. . . ." It was then near noontime on the second day of the trial and the midday recess was taken. Plaintiff called its third and last witness, one Peyrone, at the beginning of the afternoon session.

At the conclusion of his testimony, the following occurred: "THE COURT: Do you rest? MR. SCOTT: Yes, we rest, Your Honor. MR. BURNETT: Now, if Your Honor please, I have a motion to make." (Plaintiff's counsel knew at this time, since defendant's counsel had stated so for the record, that defendant intended to rely upon the evidence already adduced and did not intend to offer anything further.)

Court and counsel then convened in chambers, where the following took place: "MR. BURNETT: If Your Honor please, at this time *I move* to dismiss this action and too *for an order of the Court holding that the plaintiff has no right to condemn"* (emphasis added). Then followed an extended argument and discussion concerning the issue of necessity.

In the earlier part of this discussion, defendant's counsel stated: "And I therefore respectfully submit that they are not entitled to condemn." Then appears the following: "THE COURT: You are asking for? MR. BURNETT: For dismissal of the action. THE COURT: Or a non-suit? MR. BURNETT: Sir? THE COURT: Or a non-suit? MR. BURNETT: Yes, on the ground that they haven't proved the present necessity of the land. . . ."

Plaintiff argues that the foregoing constitutes an admission by defendant's counsel that his motion was for a nonsuit. The record does not bear this out. In the first place, neither coun-

sel at any time ever used the word "nonsuit" and, after it had been more fully advised by further discussion, the court never used the word again.

Plaintiff calls attention to the following minute entry: "Thereupon counsel for defendant makes a motion that the action be dismissed *or* that a non-suit be granted. Whereupon the court, being duly advised, makes its order that the action is dismissed" (emphasis ours). It appears, by necessary implication, that a nonsuit was not granted even if it be assumed that one was requested. We appreciate that an order granting a nonsuit is in effect an order for dismissal. But when "nonsuit" and "dismissal" are considered in the alternative, the use of the term "dismissal," in preference to "nonsuit," becomes of some significance. We think this has a bearing on whether the court intended to make an adjudication on the merits as distinguished from the granting of a nonsuit, and that what was really meant was that the entire action was being disposed of by the ruling on the issue of necessity. Thus, in effect, the court intended to dismiss that phase of the action having to do with valuation, which was the sole issue to be presented to the jury.

After its early mention of the word "nonsuit," the court became well aware that a nonsuit was not proper under the then existing nonsuit concept. Section 5006.1 of the Public Resources Code was explicitly discussed. It provides: "The declaration of the director shall be prima facie evidence: (a) Of the public necessity of such proposed acquisition. (b) That such real or personal property or interest therein is necessary therefor. (c) That such proposed acquisition is planned or located in a manner which will be most compatible with the greatest public good and the least private injury." With this prima facie evidence in the record, a nonsuit could not properly have been granted under the rule then in existence, and so the court must have considered that it was weighing the evidence as upon the submission of a nonjury case.

Finally, the court's ruling itself demonstrates that it did not consider that it was granting a nonsuit. At the conclusion of the arguments, the court stated: "Well, it wouldn't serve any useful purpose, I don't think, to continue on here any longer. The motion is granted. I will dismiss the jury. No doubt you gentlemen will follow the procedure that is appropriate under the circumstances." If the court's intention was to grant a nonsuit, there would be no reason for it to

request counsel to "follow the procedure that is appropriate under the circumstances." All that would be necessary or required would be a minute order to this effect. (*Costa* v. *Regents of University of Cal.*, 103 Cal.App.2d 491 [229 P.2d 867].) There would be no further "procedure" for counsel to follow. Findings and a formal order would be superfluous. (*Finch* v. *Ekstrom*, 115 Cal.App. 381 [1 P.2d 516].)

Respondent points out that, if it was a nonsuit that was granted, then this appeal would have to be dismissed. As stated in *Costa, supra*, at page 493, an order granting a nonsuit entered in the court's minutes is the appealable order. The time to appeal therefrom commences to run from the date of the entry of the minute order, which was November 17, 1960, "unless such minute order as entered expressly directs that a written order be prepared, signed and filed, in which case the date of entry shall be the date of filing of the signed order." (Rules on Appeal,* rule 2(b)(2).) The notice of appeal herein was filed on June 8, 1961.

In *Pessarra* v. *Pessarra*, 80 Cal.App.2d 965 [183 P.2d 279], the minute order vacating a divorce decree contained no direction that a written order be prepared. However, at a later time, the court signed a formal order which contained findings of fact. The notice of appeal was filed 67 days after the entry of the minute order but within 60 days after the entry of the formal order. The appeal was dismissed, the court basing its decision on rule 2(b)(2) of the Rules on Appeal, which was adopted in 1943. Cases decided prior to the enactment of this rule were distinguished on this ground. In *Grable* v. *Martin*, 193 Cal.App.2d 241 [14 Cal.Rptr. 275], a motion for nonsuit was granted and the order was entered in the minutes. A signed formal judgment of dismissal was later filed and entered. The notice of appeal was filed 67 days after the entry of the minute order but within 60 days after the entry of the signed formal order. The appeal was dismissed on the authority of *Costa* v. *Regents of University of Cal., supra*, the court quoting from the syllabus thereof as follows: " 'An appellate court will dismiss an appeal filed beyond the prescribed period after entry of a minute order granting a nonsuit, although the appeal is filed within the prescribed period as measured from the date of a formal judgment of nonsuit entered subseqent to the minute order, since such

---

*Now Cal. Rules of Court, rule 2(b)(2).

order is the appealable order.' '' (Hearing by Supreme Court denied August 16, 1961.)

In *Brice* v. *Department of Alcoholic Beverage Control,* 153 Cal.App.2d 315 [314 P.2d 807], Justice Peters, who also wrote the opinion in *Pessarra* v. *Pessarra, supra,* reached a different conclusion because of the different wording of the minute order, stating: "But, in the instant case, the minute order expressly stated: 'Writ to issue. Findings to be prepared.' This demonstrates to a certainty that further court action was contemplated. Respondents argue that this provision was meaningless because, in such a proceeding, findings are not required. It is probably true that in such a proceeding findings are not required, but that does not alter the fact that by its minute order the court expressly stated that further court action was contemplated."

There is nothing in the minute order from which it can be inferred that the court contemplated any further action with respect to its order of dismissal. The order simply recites: "Whereupon, the court, being duly advised, makes its order that the action is dismissed." However, the reporter's transcript clearly indicates that the court did contemplate further court action when it announced its decision and then stated: "No doubt you gentlemen will follow the procedure that is appropriate under the circumstances."

We have concluded that the court's decision was based upon a weighing of the evidence after submission of the issue of necessity and that it intended to and did decide such issue on the merits, with full realization that the prima facie case made out by appellant was sufficient to avoid a nonsuit. Therefore, we hold that the filing of the notice of appeal, on June 8, 1961, "from that certain judgment made and entered in the above-captioned cause on the 21st day of April, 1961," was timely.

Plaintiff makes the point that findings cannot be signed until after the cause is submitted. (Code Civ. Proc., § 632.) This is answered by our holding that the issue of necessity was submitted on November 17, 1960, and the decision thereon disposed of the entire cause.

ARE THE FINDINGS SUPPORTED BY THE EVIDENCE?

Section 5006.1 of the Public Resources Code, as amended in 1959, provides: "The declaration of the director shall be prima facie evidence: (a) Of the public necessity of such proposed acquisition. (b) That such real or personal

property or interest therein is necessary therefor. (c) That such proposed acquisition is planned or located in a manner which will be most compatible with the greatest public good and the least private injury." As originally enacted in 1947, this section provided that such evidence was *"conclusive."* After 12 years of experience, the Legislature apparently decided that it would be better to allow the courts the right to judicially review the proposed taking where it was for the purpose of a public park. No such change was made with respect to the condemning bodies specified in section 1241 of the Code of Civil Procedure, whose resolutions or ordinances are conclusive as to the issue of necessity. (Cf. *People* v. *Chevalier,* 52 Cal.2d 299, 307 [340 P.2d 598].)

In the instant case, after the evidence was completed as to the issue of necessity, the trial court made the following findings: "That no public necessity has been shown to exist for the proposed acquisition of the property described in the complaint and it is not true that the public interest or necessity requires such acquisition for the purpose alleged in the complaint [public park] or otherwise or at all."

Plaintiff was required to prove the allegation of necessity by a preponderance of the evidence. The only evidence supporting the affirmative of this issue is the declaration of the director. The first witness, Sherman, testified that he was a land agent with the State Division of Beaches and Parks; he identified the property sought to be taken and some of its physical characteristics; he gave no testimony as to the necessity of the taking. The second witness, Knight, testified that he was Deputy Chief of the Division of Beaches and Parks, and that the planning, acquisition and development program for the division was under his general direction; that his division prepared a report on the "Anderson Reservoir Project" (which included the subject property) and submitted it to the State Park Commission; that the acquisition was for the benefit of Santa Clara County and was being acquired for its benefit; that the Board of Supervisors of Santa Clara County had passed a resolution expressing a willingness to enter into a cooperative park and recreation venture with the State Division of Beaches and Parks for the development of the acquired property as a public park; that in general he concurred with the project report prepared by his division. The report was admitted in evidence without objection; it contained the following conclusions: "1. Anderson Reservoir has

a reasonable recreation potential and should be developed for public use by some agency. 2. Santa Clara County has a Park System, which is expanding and could develop and operate Anderson Reservoir, expanding facilities proportionately to use and to the County's financial ability. 3. Present funds available for acquisition at Anderson Reservoir embrace Coe Memorial Park and Lexington Reservoir and are insufficient to acquire needed lands for more than one project. 4. Providing that all funds available could be placed at Anderson Reservoir, only 500 acres of land could be acquired, which is only about one-sixth of the area necessary to make a desirable recreation unit. 5. If additional acquisition funds cannot be anticipated in the immediate future, it seems doubtful that the State should enter into a recreation program on Anderson Reservoir. 6. Before any suitable area acquired could be put to use, it will be necessary to construct approximately one and a half miles of side-hill access road at an estimated cost of $25,000.''

From the foregoing it appears that the proposed project depended upon Santa Clara County going ahead with its financing and developing. It is true that a binding agreement between the state and the county was not a condition precedent to plaintiff's right to condemn, but it has a bearing on whether the acquisition of the subject property is a present public necessity. (*San Diego Gas & Elec. Co.* v. *Lux Land Co.*, 194 Cal.App.2d 472, 481 [14 Cal.Rptr. 899], and cases therein cited.) Here, the county had expressed in a resolution a ''willingness'' to enter into a cooperative agreement with the state, and that was as far as it had gone. It is admitted that the 500 acres involved herein was too small to develop and that the proposed project would require a total of approximately 3,000 acres.

The finding of the trial court that ''no public necessity has been shown to exist for the proposed acquisition'' is sufficiently supported by the evidence.

### MOTION TO REOPEN

On December 23, 1960, plaintiff filed a motion to vacate the court's order made on November 17, 1960, and reopen the case for the purpose of taking additional evidence on the issue of necessity. This motion was denied.

The only affidavit filed in support of the motion is that of plaintiff's counsel. It recites that he intends to call Buford

Amyx, Supervisor of Parks of Santa Clara County, Charles DeTurk, Chief of the Division of Beaches and Parks of the State of California, DeWitt Nelson, Director of Natural Resources of the State of California, the Supervisors of Santa Clara County, and one or more persons employed by the said Division of Beaches and Parks, the identity of whom he is not presently informed, to testify with respect to the necessity of the acquisition of the 500 acres involved herein; that he believes that it can be demonstrated through said witnesses that the proposed acquisition is necessary for park purposes and is in the public interest and that the testimony of such witnesses will rebut the recommendations and conclusions of W. A. Weatherbee and Robert B. Hatch made under date of September 10, 1957, with respect to acquiring the 500 acres. (This is the "project report" previously referred to.)

There is no showing of what facts these witnesses would testify to nor any showing of why this evidence was not produced at the trial. The affidavit is merely the hearsay statement of plaintiff's counsel that he believes that the testimony of these witnesses would support a conclusion that the taking is necessary. As before stated, plaintiff knew at all times during the litigation that necessity was an issue. Yet it was not until over one month after the court had announced its decision that any effort was made to reopen the case. The significance of waiting until after the court has indicated its ruling is commented upon in *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 72 [77 P.2d 1059].

As stated in *Keppelman* v. *Heikes*, 111 Cal.App.2d 475, 483-484 [245 P.2d 54] : "It is well settled that permitting or denying a party the right to reopen a case for the purpose of introducing further proof, and particularly after the trial has concluded even though before judgment, is a matter within the discretion of the trial court and will not be disturbed on appeal unless there has been a clear abuse of discretion. [Citations.] . . . There is no question but that the testimony of Heikes would have been material and important. Nevertheless, we cannot say that the court abused its discretion in refusing to reopen the case to obtain his deposition. There was no showing of diligence by defendant in attempting to locate Heikes prior to the trial. . . . While the record does not disclose whether the judge had intimated what his decision would be, it is significant that defendant having all the information concerning Heikes that it later set up in its motion to

reopen, permitted the case to be submitted without giving the judge that information." To the same effect is *Kaplan* v. *Hacker*, 113 Cal.App.2d 571, 573 [248 P.2d 464].

The judgment is affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied June 18, 1962, and appellant's petition for a hearing by the Supreme Court was denied July 18, 1962.