[Civ. No. 27565. First Dist., Div. One. Apr. 23, 1971.]

ROBERT T. GRAY et al., Plaintiffs and Appellants, v. EARL B. WHITMORE, as Sheriff, etc., et al., Defendants and Respondents.

[Civ. No. 28540. First Dist., Div. One. Apr. 23, 1971.]

CECILE DIONIO, Plaintiff and Appellant, v. MATTHEW C. CARBERRY, as Sheriff, etc., et al., Defendants and Respondents.

[Civ. No. 28319. First Dist., Div. One. Apr. 23, 1971.]

OLGA BRYSON, Petitioner, v. MATTHEW C. CARBERRY, as Sheriff, etc., Respondent; JOSEPH MOALEM, Real Party in Interest.

(Consolidated Cases.)

4

## COUNSEL

Bruce A. Bailey, Cecil L. McGriff, Jeffrey D. Jennings and Jay-Allen Eisen for Plaintiffs and Appellants in No. 27565.

Daniel N. Loeb, Sidney M. Wolinsky, Norman S. Nayfach, Armando M. Menocal III, Michael H. Marcus and Suzanne Martinez for Plaintiff and Appellant in Civ. No. 28540 and for Petitioner in No. 28319.

Keith C. Sorenson, District Attorney, and Jerome F. Coleman, Deputy District Attorney, for Defendants and Respondents in No. 27565.

James C. Purcell for Defendant and Respondent in No. 28540 and for Respondent in No. 28319.

Warren Sullivan for Real Party in Interest in No. 28319.

## OPINION

**MOLINARI, P. J.**—The proceedings before this court involve three separate causes which have been consolidated for determination because they present common questions of law. In *Gray* v. *Whitmore* (1 Civ. 27565) and in *Dionio* v. *Carberry* (1 Civ. 28540) the respective plaintiffs appeal from an order denying them a preliminary injunction and a peremptory writ of mandate. In *Bryson* v. *Carberry* (1 Civ. 28319) a petition for a writ of mandate was filed in this court and we issued an alternative writ of mandate.

### Statement of the Cases

#### Gray v. Whitmore

Plaintiffs were evicted from their Redwood City apartment pursuant to an unlawful detainer action. Pursuant to a writ of possession defendant sheriff seized plaintiffs' furniture and sundry personal effects remaining on the premises and delivered them to the owner of the premises for safe-

keeping pursuant to Code of Civil Procedure section 1174.[1] Plaintiffs thereupon filed with defendant sheriff a claim of exemption pursuant to Code of Civil Procedure section 690.26.[2] The sheriff refused to accept or act upon such claim and the instant action was instituted whereby, pursuant to a petition for a writ of mandate, prohibitive injunction, and declaratory relief, plaintiffs, on their own behalf and on behalf of all those similarly situated, sought to compel the sheriff to accept and honor their claim of exemption, to have section 1174 of the Code of Civil Procedure[3] declared unconstitutional, and to prevent the sheriff from distraining and selling their property. Following a hearing, the trial court denied the preliminary injunction, discharged the alternative writ of mandate it had previously issued, terminated a temporary stay of execution, and dismissed the complaint.

## Dionio v. Carberry

The facts are essentially similar to those in *Gray* v. *Whitmore* and arise out of the eviction of plaintiff from her San Francisco apartment. In this case the court below denied plaintiff's petition for a peremptory writ of mandate and preliminary injunction, dissolved the temporary restraining order, and discharged the order to show cause.

## Bryson v. Carberry

The facts are essentially similar to those in *Gray* v. *Whitmore* and arise out of the eviction of plaintiff from her San Francisco apartment. Plaintiff sought by petition for writ of mandate filed in this court to compel respondent sheriff to accept and process her claimed exemption and for an injunction against the landlord, the real party in interest, directing him to release the subject property and prohibiting him from selling such property. We issued an alternative writ of mandate directing the sheriff to show cause

---

[1]Code of Civil Procedure section 1174 provides, in pertinent part, that a plaintiff landlord, having been repossessed of his premises, has the right to store, for 30 days, the tenant's personal property remaining on the premises after eviction, which property is redeemable by the tenant's payment of storage costs and any rental judgment outstanding within the 30 days. If the property is not redeemed within 30 days, it is deemed abandoned and may be sold at a public auction, the proceeds to be applied in satisfaction of the storage costs and rental judgment. Any remaining balance shall be returned to the tenant.

[2]Code of Civil Procedure section 690.26 provides, in relevant part, a procedure whereby a debtor, claiming property exemption from attachment or execution under auspices of Code of Civil Procedure sections 690.1 to 690.25, inclusive, may stay levy pursuant to a writ of execution or attachment.

[3]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

why we should not issue a peremptory writ compelling him to accept and process petitioner's claim of exemption and of those similarly situated and directing the real party in interest to show cause why he should not release to petitioner the subject personal property.

## Contentions

Plaintiffs Dionio and Gray and petitioner Bryson contend that the subject property is exempt from execution under the provisions of section 690, and that they are entitled to avail themselves of the execution rights under the provisions of section 690.26. They contend, alternatively, that section 1174 is repugnant to the equal protection clauses of the federal and California Constitutions. Bryson and Gray also contend, alternatively, that section 1174 is repugnant to the due process clauses of the federal and California Constitutions. Respondents, in turn, assert that section 1174 is constitutional, and, on their part, question the propriety of the class actions here involved. Insofar as the respective sheriffs are concerned, they contend that they are not obliged under the statute to accept and process any claim of exemption and that their responsibility and official function ceased and terminated when they restored the respective landlords to possession and delivered the property remaining on the premises to them.

## Code of Civil Procedure Section 1174

The provisions of section 1174, as amended in 1968,[4] which are pertinent to our discussion read as follows:

"A plaintiff having obtained a writ of restitution of the premises pursuant to an action for unlawful detainer, shall be entitled to have the premises restored to him by officers charged with the enforcement of such writs. . . . If the tenant does not vacate the premises within five days from the date of service [of the writ], or, if the copy of the writ is posted, within five days from the date of mailing of the additional notice, the enforcing officer shall remove the tenant from the premises and place the plaintiff in possession thereof. . . . [¶] All goods, chattels or personal property of the tenant remaining on the premises at the time of its restitution to the plaintiff shall be stored by the plaintiff in a place of safekeeping for a period of 30 days and may be redeemed by the tenant upon payment of reasonable costs incurred by the plaintiff in providing such storage and the judgment rendered in favor of plaintiff, including costs. Plaintiff may, if he so elects, store such goods, chattels or personal property of the tenant

[4]In 1969 and 1970 minor amendments were made to section 1174 but they are not pertinent to our discussion.

on the premises, and the costs of storage in such case shall be the fair rental value of the premises for the term of storage. An inventory shall be made of all goods, chattels or personal property left on the premises prior to its removal and storage or storage on the premises. Such inventory shall either be made by the enforcing officer or shall be verified in writing by him. The enforcing officer shall be entitled to his costs in preparing or verifying such inventory. [¶] In the event the property so held is not removed within 30 days, such property shall be deemed abandoned and may be sold at a public sale by competitive bidding, to be held at the place where the property is stored, after notice of the time and place for such sale has been given at least five days before the date of such sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held. Notice of the public sale may not be given more than five days prior to the expiration of the 30 days during which the property is to be held in storage. All money realized from the sale of such personal property shall be used to pay the costs of the plaintiff in storing and selling such property, and any balance thereof shall be applied in payment of plaintiff's judgment, including costs. Any remaining balance shall be returned to the defendant."

The foregoing amendment to section 1174 evinces the latest attempt of the Legislature to solve the troublesome problem of what should be done with the tenant's property remaining on the premises restored to a landlord through unlawful detainer proceedings. Prior to 1967, upon a judgment of restitution being issued, the enforcing officer served the writ on the tenant who had five days to vacate. If the tenant did not do so the enforcing officer was authorized to move the tenant and his furniture and possessions out of the premises. (See *Lee Chuck* v. *Quan Wo Chong Co.,* 81 Cal. 222, 229 [22 P. 594]; *Conniff* v. *Superior Court,* 90 Cal.App. 169, 175 [265 P. 555].) The statute was silent as to where the tenant's property would come to rest once it had been removed from the premises. Presumably the enforcing officer could put the property out on the street or sidewalk. If he did so he might be in violation of the laws of jurisdictions which prohibited the storage or placing of personalty on sidewalks or ground adjacent thereto; and even in those jurisdictions where there was no such ordinance, such deposit could interfere with traffic on public thoroughfares, it could pose a hazard to innocent third persons, and it could interfere with the property rights of third persons. (See 22 Ops.Cal.Atty. Gen. 172, 173.) Moreover, such deposit could result in loss of such property by theft or the action of the elements. Accordingly, the enforcing officer was left to his own devices or he could rely upon the advice of the Attorney General's opinion which stated that public policy authorized the enforcing officer to remove the property to a place of safekeeping. (22 Ops.Cal.Atty.Gen., *supra.*) In that

same opinion, statutes (§ 1034½ and Gov. Code, § 26748) were cited giving the levying officer the authority to charge and collect fees from the plaintiff in the unlawful detainer action for such removal and temporary storage. The questions as to how long the property should be stored, whether it could be redeemed by the tenant, or whether it could be sold if it was deemed abandoned, remained unanswered.

In 1967 the Legislature amended section 1174 to require the county to store the property remaining on the premises at the time of its restitution to the plaintiff for 30 days subject to redemption by the tenant "upon payment of reasonable costs incurred by the enforcing officers and in providing such storage and the judgment rendered in favor of the plaintiff, including costs." The moving and storage costs were to be reimbursed to the county and the judgment and costs of procuring the same were to be reimbursed to the plaintiff. In the event the property so held was not redeemed within 30 days, the property was deemed abandoned and it could be sold at public sale. The proceeds realized from such a sale were to be used to reimburse the enforcing officer for his costs and expenses, and all sums in excess of such costs were to be applied in payment of the plaintiff's judgment. Any remaining excess was to be held by the county for the tenant for a period of five years, and if unclaimed at the end of such period was to be deposited in the general fund of such county.

The 1968 amendment with which we are here concerned shifted the duty of storing the tenant's property to the plaintiff landlord and provides that the reasonable costs of storage incurred by the landlord are to be reimbursed by him either by the tenant, if the property is redeemed by him, or out of the proceeds realized upon a public sale of the property if it is not redeemed by the tenant as prescribed in the statute. As in the case of the 1967 amendment, the present statute provides that in order to redeem the property the tenant must pay the judgment rendered in favor of the plaintiff, including costs, and provides that upon the public sale of the property in the event the property is not redeemed the proceeds, after application of the costs of sale and the storage costs, are to be applied to the judgment including costs. Any remaining balance is to be paid by the plaintiff to the tenant defendant.[5]

■ In ascertaining the intent of the Legislature in the light of the pur-

---

[5]It has been suggested that the reason the Legislature shifted the duty of storing the property from the county to the plaintiff landlord was because a doubt had been expressed as to the constitutionality of the requirement that the county store the property on the ground that such provision constituted a gift of public funds in contravention of article XIII, section 25 (formerly art. IV, § 31) of the California Constitution. (See *Dobner* v. *Borrini,* 4 Cal.App.3d Supp. 1, 4 [84 Cal.Rptr. 110]; 21 Hastings L.J. 491, 494.)

pose sought to be achieved and the evils to be eliminated (*Benson* v. *Superior Court,* 214 Cal.App.2d 551, 558 [29 Cal.Rptr. 760]; *Lesem* v. *Board of Retirement,* 183 Cal.App.2d 289, 298 [6 Cal.Rptr. 608]), and giving effect to the statute according to the usual, ordinary language used in framing it (*Chavez* v. *Sargent,* 52 Cal.2d 162, 203 [339 P.2d 801] [overruled on other grounds, *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88,* 53 Cal.2d 455, 475 (2 Cal.Rptr. 470, 349 P.2d 76)]; *Benson* v. *Superior Court, supra; Rich* v. *State Board of Optometry,* 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512]), we interpret the subject provisions to mean that, at the time possession of the premises is restored to the plaintiff and an inventory of the tenant's property remaining on the premises is made or verified by the enforcing officer, a deposit for purposes of storage is created by the terms of the statute and the landlord becomes a depositary for the safekeeping of the property for the benefit of the tenant. (Cf. Civ. Code, §§ 1813, 1814, 1815, 1844, 1845.) When the plaintiff is placed in such possession and the inventory is taken, the responsibilities and duties of the enforcing officer cease and terminate.

■ We further interpret the provisions of section 1174 to mean that the plaintiff is under a duty to store the property for at least 30 days unless it is sooner redeemed by the tenant as therein provided. (Cf. Civ. Code, § 1854.) We perceive, however, that in view of the language of section 1174 which states that the property "*may* be sold at public sale" (italics added) upon the prescribed notice in order to satisfy the costs of storage and sale out of the proceeds of sale (and to apply the balance to the judgment), the plaintiff continues as a depositary until such sale is effected. It appears implicit in the statute, therefore, in the light of its purpose, that until such time as the property is actually sold the tenant is entitled to redeem the property upon payment of said costs and judgment to the plaintiff.

■ As such a depositary the plaintiff is entitled to compensation for the storage. His rate of compensation is fixed by section 1174 to the reasonable costs incurred by him in providing such storage, or if the property is stored on the plaintiff's premises, to the fair rental value of such premises. (Cf. Civ. Code, §§ 1853, 3051.) To secure the payment of such compensation section 1174, in essence, gives the plaintiff a special lien on the property dependent on possession. This lien is discharged by payment of the charges specified in section 1174 and may be enforced after the 30-day period by proceeding to sell the property. (Cf. Civ. Code, §§ 1856, 3051, 3052.)

We observe here that the pertinent provisions of section 1174 contain characteristics which are not indigenous to deposits for safekeeping. These are found in the provisions which provide for the redemption of the stored

property by the tenant defendant upon the payment of the judgment rendered in favor of the plaintiff landlord, including costs, and those which provide that upon the sale of the unredeemed property the balance of all money realized from the sale, after the payment of the costs of the plaintiff in storing and selling the property, shall be applied in payment of the plaintiff's judgment. Such provisions have characteristics closely akin to the procedures afforded for the enforcement of judgments against the property of a judgment debtor by way of the writ of execution.

## The Writs

An analysis of each of the writs issued in the instant cases upon the entry of judgment discloses that under its language it purported to be both a writ for the restitution of the premises and a writ of execution to satisfy the money judgment.[6] The writ, in addition to commanding the sheriff to place the plaintiff in possession of the premises described in the judgment, directed him to satisfy the amount due on said judgment with interest and costs out of the personal property of the judgment debtor. The sheriff's return to the writ, in each instance, discloses, however, that he did not levy on any of the personal property of the judgment debtor but that he placed the plaintiff in possession of the premises and that, at the time he gave such possession to the plaintiff, property of the defendant described in the inventory attached to the return remained on the premises. In the *Dionio* and *Bryson* cases the inventory bears an acknowledgment by the plaintiff that he received possession of the premises and the personal property left on the premises by the defendant.

A levy on personal property capable of manual delivery must be made by physically taking and retaining the property in custody. (§§ 688, 542, subd. 3; *Dutertre* v. *Driard,* 7 Cal. 549, 551; *Smart* v. *Sosey,* 49 Cal. App. 332, 334 [193 P. 167].) Here the property was not locked up; a keeper was not placed in charge of it; and it was not removed from the subject premises. Although an inventory was taken, such taking was not in conjunction with the custody essential to the validity of an execution but solely in compliance with the duty placed upon the enforcing officers to place the plaintiff in possession of the premises in which the property was located. In sum, the enforcing officer did not purport to assert his power and control over the property as required in the case of a valid execution. (See *Smart* v. *Sosey, supra.*)

It is convenient to observe here that the primary purpose of an unlawful detainer action is to obtain the possession of real property in the

---

[6]In *Dionio* and *Bryson* the writ is entitled "Writ of Possession." In *Gray* it is designated "Writ of Possession of Real Property and of Execution."

cases specified by statute. (*Union Oil Co.* v. *Chandler,* 4 Cal.App.3d 716, 721 [84 Cal.Rptr. 756]; *Markham* v. *Fralick,* 2 Cal.2d 221, 227 [39 P.2d 804].) The judgment for such possession is enforced by a writ of restitution. (§ 1174.) The judgment, if any, for damages and the rent found due pursuant to section 1174 is a mere incident to the main object—the recovery of possession. (*Arnold* v. *Krigbaum,* 169 Cal. 143, 146 [146 P. 423].) Such a judgment is satisfied by a writ of execution under the execution statutes. (§§ 681, 682, 682.1, 683, 684, 688.) Each, the writ of possession and the writ of execution is a separate and distinct process carrying into effect the directions in the judgment and each is governed by the statutes pertinent thereto.

## The Exemption Statutes

■ Adverting to the contention that the subject property is exempted from execution under the provisions of section 690 and that plaintiffs and petitioner are entitled to avail themselves of the exemption rights under the provisions of section 690.26, we observe that these statutes apply to property which has been levied upon by the levying officer under a writ of attachment or execution and which, it is claimed, is exempt from attachment or execution pursuant to the provisions of section 690 to 690.25, inclusive.[7] Here, as pointed out above, the only writ that was involved was that which sought a restitution of the premises; no property of the tenant was levied upon pursuant to a writ of execution. Upon service of the writ of restitution, pursuant to section 1174, plaintiffs and petitioner herein were free to remove their property within five days from the date of service of the writ and they were thereafter entitled to redeem the property upon its being stored by the landlord at any time prior to the public sale held pursuant to section 1174. The enforcing officer performed his duties fully under the writ of restitution when he restored the premises to the landlord and made or verified the inventory of the tenant's property. At no time was the sheriff in the physical control or possession of the property excepting for the taking of the inventory. Accordingly, he was under no duty or obligation to entertain or recognize any claim of exemption pursuant to section

---

[7]Section 690, in pertinent part, provides that "The property mentioned in Sections 690.1 to 690.25, inclusive, . . . *is exempt from execution or attachment,* . . . when claim for exemption is made to the same by the judgment debtor or defendant as hereinafter in Section 690.26 provided." (Italics added.) Under section 690.2 necessary household furniture and certain specified sundry personal effects are exempt from execution or attachment. Section 690.26, in pertinent part, reads as follows: "(1) If the property mentioned in Sections 690.1 to 690.25, inclusive, *shall be levied upon under writ of attachment or execution,* the defendant or judgment debtor . . . , in order to avail himself of his exemption rights as to such property, shall deliver *to the levying officer* an affidavit . . . alleging that the property levied upon . . . is exempt, . . ." (Italics added.)

690.26. The procedures therein provided clearly apply when the property has been levied upon under a writ of attachment or execution and the sheriff is exercising dominion and control of the property levied upon pursuant to such writ.

We hold, moreover, that it may not be contended that there has been a delivery of the subject property by the enforcing officer to the plaintiff landlord and that such a delivery constituted a levy upon the property so as to involve the exemption statutes. As we perceive the provisions of section 1174, the enforcing officer does not take possession of the defendant tenant's property pursuant to the writ of restitution, nor does he take possession of such property for the purpose of delivering it to the plaintiff landlord. The enforcing officer's only involvement with the property is the duty imposed upon him to make an inventory thereof or to verify the inventory if it is made by someone else. The enforcing officer performs this function as a neutral party designated by statute to assure a proper and accurate inventory of the property. The delivery of the property from the defendant tenant to the plaintiff landlord for purposes of storage is effected by operation of law when the tenant permits his property to remain on the premises at the time of their restitution to the landlord.

Insofar as the plaintiff landlord is concerned, he does not, nor can he, assume the status of levying officer since such authority is not within the contemplation of the statutes. Accordingly, he is not empowered to entertain or act upon any claim of exemption. He is merely a bailee for storage who, under the provisions of section 1174, is to be reimbursed for the charges and payment therein specified. We, therefore, conclude that such reimbursement may not be defeated by a claim of exemption under the statutes applicable to levies by way of writs of attachment or execution. We are thus left with the consideration of the question whether such reimbursement, or any part thereof, is rendered nugatory because it offends the constitutional requirements prescribed by the due process and equal protection clauses of the federal and California Constitutions.

## Due Process and Equal Protection

Section 1174 is attacked on the basis that it denies substantive due process and the equal protection of the law. With respect to due process, it is urged that the portion of the statute under discussion constitutes an arbitrary deprivation of property by legislative fiat absent any justifying public policy, and that it constitutes a statutory collection device for landlord judgment creditors, and is therefore promotive of special rather than general interests. The latter argument appears more properly addressed to the issue whether the statute deprives the tenant judgment debtor of the

equal protection of the law. In this regard we note that it is urged that the statute deprives the tenant judgment debtor of the equal protection of the law because it invidiously discriminates against the class of judgment debtors, who are coincidentally tenants, by setting up special privileges in favor of landlord judgment creditors. With regard to the alleged deprivation of the equal protection of the law, the contention is also made that section 1174 deprives the tenant judgment debtor of the equal protection of the law because it prevents such debtors from asserting their statutory exemptions with respect to personal property.

■ In considering these contentions we observe in preface that article I, section 13 of the California Constitution, which provides that no person shall be deprived of property without due process of law, has been held to be identical in scope and purpose with the due process clause of the federal Constitution. (See *Gray* v. *Hall,* 203 Cal. 306, 318 [265 P. 246]; *Abstract Investment Co.* v. *Hutchinson,* 204 Cal.App.2d 242, 245 [22 Cal.Rptr. 309].) ■ Similarly, article I, section 21 and former article IV, section 25 of the California Constitution, providing, respectively, that no citizen or class of citizens shall be granted privileges and immunities which are not granted to all citizens upon the same terms and that the Legislature shall not pass local or special laws in certain enumerated cases, are essentially the same and, accordingly, are governed by the same standards as those prescribed by the Fourteenth Amendment of the federal Constitution. (See *County of San Bernardino* v. *Way,* 18 Cal.2d 647, 658 [117 P.2d 354]; *County of L.A.* v. *Southern Cal. Tel. Co.,* 32 Cal.2d 378, 389 [196 P.2d 773]; *Whittaker* v. *Superior Court,* 68 Cal.2d 357, 367, fn. 16 [66 Cal.Rptr. 710, 438 P.2d 358]; *Hargens* v. *Alcoholic Bev. etc. App. Bd.,* 263 Cal.App.2d 601, 605 [69 Cal.Rptr. 868].)

■ The term "due process of law" asserts a fundamental principle of justice which is not subject to any precise definition but deals essentially with the denial of fundamental fairness, shocking to the universal sense of justice. (See *Brown* v. *New Jersey,* 175 U.S. 172, 176 [44 L.Ed. 119, 121, 20 S.Ct. 77]; *Dent* v. *West Virginia,* 129 U.S. 114, 123-124 [32 L.Ed. 623, 626, 9 S.Ct. 231]; *Betts* v. *Brady,* 316 U.S. 455, 462 [86 L.Ed. 1595, 1601, 62 S.Ct. 1252]; *Galvan* v. *Press,* 347 U.S. 522, 530 [98 L.Ed. 911, 921, 74 S.Ct. 737]; *Mihans* v. *Municipal Court,* 7 Cal.App.3d 479, 484 [87 Cal.Rptr. 17].) The definition in each case depends upon the circumstances varying with the subject matter and the necessities of the situation. (*Moyer* v. *Peabody,* 212 U.S. 78, 84 [53 L.Ed. 410, 416, 29 S.Ct. 235].) Accordingly, the same circumstances may in one setting constitute a deprivation of due process while in another setting, in the light of other considerations, the same circumstances may not amount to such denial. (*Betts* v.

*Brady, supra* [overruled on other grounds, *Gideon* v. *Wainwright,* 372 U.S. 335, 339 (9 L.Ed.2d 799, 802, 83 S.Ct. 792, 93 A.L.R.2d 733)].)

Under the concept of "due process of law," procedural as well as substantive rights are protected. ▮ Procedural due process requires that before a person is deprived of his life, liberty or property he must be given notice of the proceedings against him (see *Anderson Nat. Bank* v. *Luckett,* 321 U.S. 233, 246 [88 L.Ed. 692, 704, 64 S.Ct. 599, 151 A.L.R. 824]; *Pierce* v. *Superior Court,* 1 Cal.2d 759, 762 [37 P.2d 453, 460, 96 A.L.R. 1020]), he must be given an opportunity to defend himself (see *Shields* v. *Utah Idaho R. Co.,* 305 U.S. 177, 182 [83 L.Ed. 111, 115, 59 S.Ct. 160]; *Gray* v. *Hall, supra,* 203 Cal. 306, 318), and the propriety of the deprivation must be resolved in a manner consistent with essential fairness. (See *Hannah* v. *Larche,* 363 U.S. 420, 442 [4 L.Ed.2d 1307, 1321, 80 S.Ct. 1502]; *Galvan* v. *Press, supra,* 347 U.S. 522, 530; *Mihans* v. *Municipal Court, supra,* 7 Cal.App.3d 479, 484.) ▮ Substantive due process, on the other hand, deals with protection from arbitrary legislative action, even though the person whom it is sought to deprive of his right to life, liberty or property is afforded the fairest of procedural safeguards. In substantive law such deprivation is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation reasonably applied, i.e., the law must not be unreasonable, arbitrary or capricious but must have a real and substantial relation to the object sought to be attained. (See *Nebbia* v. *New York,* 291 U.S. 502, 525 [78 L.Ed. 940, 949, 54 S.Ct. 505]; *West Coast Hotel Co.* v. *Parrish,* 300 U.S. 379, 391 [81 L.Ed. 703, 708, 57 S.Ct. 578, 108 A.L.R. 1330].)

Directing our attention to the constitutional guaranty of equal protection of the laws, we observe that it has been judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty, and property and in their pursuit of happiness. (See *Truax* v. *Corrigan,* 257 U.S. 312, 336-338 [66 L.Ed. 254, 264-265, 27 A.L.R. 375]; *Kentucky Co.* v. *Paramount Exch.,* 262 U.S. 544, 550 [67 L.Ed. 1112, 1115, 43 S.Ct. 636].) ▮ As observed in *Purdy & Fitzpatrick* v. *State of California,* 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645], "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." This concept does not, however, require absolute equality (*Douglas* v. *California,* 372 U.S. 353, 357 [9 L.Ed.2d 811, 814, 83 S.Ct. 814]; *In re Antazo,* 3 Cal. 3d 100, 110 [89 Cal.Rptr. 255, 473 P.2d 999]) or that a statute necessarily apply equally to all persons (*Rinaldi* v. *Yeager,* 384 U.S. 305, 309 [16 L.Ed.2d 577, 580, 86 S.Ct. 1497]; *In re Antazo, supra*); rather, it permits

a state to provide for differences so long as the result does not amount to an invidious discrimination. (*Douglas* v. *California, supra,* at p. 356 [9 L.Ed.2d at p. 814]; *In re Antazo, supra.*)

In *Antazo,* the California Supreme Court took cognizance of the two-level test employed by the United States Supreme Court in reviewing legislative classifications under the equal protection clause with the observation that a different standard is employed in cases involving "suspect classifications" or touching "fundamental interests" as distinguished from cases in the area of economic regulation. In the former it must be established that the state has a *compelling* interest which justifies the law *and* that the distinctions drawn by the law are *necessary* to further its purpose; in the latter there is a presumption of constitutionality and it is required merely to establish that the distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose. (*In re Antazo, supra,* 3 Cal.3d 100, 110-111; see *McDonald* v. *Board of Election,* 394 U.S. 802, 809 [22 L.Ed.2d 739, 745, 89 S.Ct. 1404]; *Shapiro* v. *Thompson,* 394 U.S. 618, 638 [22 L.Ed.2d 600, 617, 89 S.Ct. 1322]; and see *Westbrook* v. *Mihaly,* 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487].)

 Adverting to the case before us in the light of the foregoing constitutional principles as applied to the challenged portions of section 1174, we deem it appropriate to observe that there are two aspects to that part of the statute under attack. One deals with the storage of the property and the payment of reasonable costs incurred for such storage and the sale of the property for storage costs if not redeemed; the other deals with the requirement that the money judgment rendered in favor of the plaintiff in the unlawful detainer action be satisfied when the property is redeemed or, if not redeemed, for the application of the proceeds from the sale of the property to said judgment after the payment of the storage and sale costs. We conclude, with respect to the first aspect, that the statute does not offend the due process or the equal protection clauses of the Fourteenth Amendment; but we do hold that the provisions dealing with the second aspect are repugnant to these clauses and are, therefore, unconstitutional.

The provisions for storage are reasonable and in no sense a denial of due process. They satisfy procedural due process because the right to the restitution of the premises is dependent upon legally instituted unlawful detainer proceedings in which the defendant tenant is afforded an opportunity to defend against the landlord's claim to have the premises restored to him and for the rents and damages alleged to be due him. If the action is contested the defendant is given notice of the entry of judgment. (§ 664.5.) Upon the issuance of the writ of restitution a copy must be served

upon the defendant or posted and mailed as provided in section 1174. Implicit in the provisions of section 1174 is the requirement that, upon the service or posting and mailing of the writ of restitution, notice must be given to the tenant that he will be removed from the premises if he does not vacate within five days from the date of such service or mailing. It is only when the tenant fails to remove his property from the restored premises within such five-day period and the premises are restored to the landlord that the latter comes into possession of the tenant's property remaining on the premises for purposes of storage.

When the landlord takes possession of the tenant's property he does so, in point of law, on the tenant's behalf in order to safeguard such property. The legislation which imposes this obligation upon the landlord is reasonable and has a real and substantial relation to the object sought to be attained. That objective is to restore the landlord to the rightful possession of his premises and at the same time obviate the possibility of loss or damage to the tenant's property where the tenant is himself unable to remove the property to a safe place. By the same token the landlord, who is performing a service for the tenant by storing the property, should be entitled to reimbursement for the reasonable costs of storage. To require the landlord to stand the expense of storage himself, whether for 30 days, or until the tenant deems it expedient to take possession of the property, would deprive the landlord of his property without due process of law since having pursued the remedies afforded him by law he is, upon obtaining a writ of restitution, entitled to possession of his premises, free of the physical presence of the tenant and his property.

The requirement that the landlord store the tenant's property for 30 days appears to us to constitute a reasonable period in the light of the objectives of the unlawful detainer statutes. It affords the tenant a reasonable time during which to find other premises in which to place or store the property and it does not create an undue hardship upon the landlord by putting a reasonable limit upon the time he is to act as a depositary. The 30-day period places a limit on the expense the landlord is obliged to incur for storage charges and renders it more likely that he will recover his charges from the tenant. To require the landlord to act as a depositary for longer than 30 days could result in a financial loss to him since the storage charges might well exceed the value of the property stored, a circumstance which also militates against the ability of the tenant to redeem the property if he is so inclined.

The landlord's right to sell the property for the purpose of recouping the storage and sale costs where the tenant fails to redeem within the prescribed period appears to us to be a reasonable provision. For the

reasons hereinabove discussed we conclude that the 30-day storage period affords a reasonable opportunity during which the equities between the parties can best be resolved. If a tenant is unable to redeem his property within that time it is less likely that he will do so after such period. Accordingly, a resolution of the troublesome problem of what to do with the property is best accomplished where the property is not redeemed within the 30-day period by the expedient of selling the property at a public sale under competitive bidding. This expedient results in putting an end to further storage expenses; it affords reimbursement to the landlord for the storage and sale expenses; and it should, in most instances, provide for the payment of the balance of the proceeds to the tenant.

Plaintiffs and petitioner assert that the landlord may demand "any amount" as storage costs and thus may effectively preclude a tenant from recovering his property. It is also contended that the landlord may hold goods otherwise exempt as "ransom" for the payment of back rent under the guise of storage costs. In considering these contentions we observe that the judgment for unpaid rent and the storage costs are separately incurred debts and that the liability for each arises under separate and different obligations. As we have already pointed out, the storage is for the tenant's benefit. Such storage is no different than the situation where a tenant voluntarily stores furniture or personal belongings with a storage company or warehouseman. In the latter situation the warehouseman has a lien on the goods deposited dependent on possession and such lien is not defeated because the property may otherwise be exempt from execution. (See Com. Code, §§ 7209, 7210.) We observe that section 1174 does not permit a landlord who stores property to charge "any amount" for storage but the *reasonable costs* (italics added) incurred by him in providing such storage. The use of the term "reasonable" has been consistently used in our statutes in reference to the compensation to be paid to bailees, warehousemen and other persons who render services in connection with the preservation of personal property where a fixed compensation has not been agreed upon. (See Civ. Code, §§ 2081, 3051; Com. Code, § 7209.)

In this state it is an established principle that "Where one performs for another, with the other's knowledge, a useful service of a character usually charged for, and the latter expresses no dissent, or avails himself of the service, a promise to pay the *reasonable* value of the services is implied." (Italics added; *Young* v. *Bruere,* 78 Cal.App. 127, 132 [248 P. 301]; *Medina* v. *Van Camp Sea Food Co.,* 75 Cal.App.2d 551, 554 [171 P.2d 445]; *Bush* v. *Lane,* 161 Cal.App.2d 278, 280 [326 P.2d 640].) This principle has been applied when an owner of property, entitled to possession of the premises, has advised the tenant or occupant that if he did not remove his property it would be placed in storage at his

expense. (*Bush* v. *Lane, supra,* at pp. 279-280; see *Whitaker* v. *U.C. Exp. and Stor. Co.,* 29 Cal.App.2d 443, 444-445 [84 ·P.2d 1051].) In such a case where the tenant or occupant chooses to allow it to be stored in a warehouse there is·an implied agreement on his part to pay the reasonable storage charges. (*Bush* v. *Lane, supra.*)

We observe that it should not be difficult to ascertain the reasonableness of the storage costs. In cases where the landlord stores the property on the premises the cost of storage is the *"fair rental value* of the premises for the term of storage." (Italics added; § 1174.) If the landlord stores the property away from the premises and he utilizes the services of a public warehouseman the rates and charges are required to be just and reasonable subject to the jurisdiction, control and regulation of the Public Utilities Commission. (See Pub. Util. Code, §§ 216, 239, 451, 734.) If the landlord stores the property away from the premises, but does not avail himself of the services of a public warehouseman, the test of reasonableness would require that the challenged charges be comparable to charges or costs which may properly be used as a criterion.

It is urged that to permit the landlord to hold the tenant's goods for storage costs will result in disputes between the landlord and the tenant as to the legitimacy and reasonableness of the storage charges. We recognize that such disputes may arise and that litigation may be required to resolve them. Such disputes, however, are no different than those which ordinarily occur in the affairs of men, the resolution of which has been entrusted to the courts. We perceive that a tenant who has been overcharged either by mistake, fraud, duress or oppression may recover against a landlord under the common count of money had and received. (*Thresher* v. *Lopez,* 52 Cal.App. 219, 220 [198 P. 419].) We apprehend, too, that upon a demand based on a tender of the reasonable charges for storage a tenant may bring an action against the landlord who refuses to surrender possession of the property either in claim and delivery for the recovery of the property itself, with damages for its wrongful detention, or for damages for the wrongful conversion of the property. (See *Peterson* v. *Sherman,* 68 Cal.App.2d 706, 711 [157 P.2d 863]; *Commercial & Sav. Bank* v. *Foster,* 210 Cal. 76, 79 [290 P. 583]; *Enfield* v. *Huffman Motor Co.,* 117 Cal. App.2d 800, 807 [257 P.2d 458]; *Lindsay* v. *Kleiber Motor Truck Co.,* 110 Cal.App. 479, 482 [294 P. 454]; *Wolfe* v. *Willard H. George, Inc.,* 110 Cal.App. 532, 535-536 [294 P. 436]; *Wade* v. *Markwell & Co.,* 118 Cal.App.2d 410, 418 [258 P.2d 497, 37 A.L.R.2d 1363]; and see Civ. Code, § 3379; Code Civ. Proc., §§ 509-521.)

Adverting to the constitutional guaranty of equal protection of the laws, we perceive that the provisions for storage afford like treatment for

persons similarly situated with respect to the legitimate purposes of the law. (See *Board of Education* v. *Watson,* 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481]; *Blumenthal* v. *Board of Medical Examiners,* 57 Cal.2d 228, 233 [18 Cal.Rptr. 501, 368 P.2d 101].) Section 1174 makes no distinction between tenants who are similarly situated. Nor are tenants whose property is stored pursuant to section 1174 treated differently than other persons whose property is delivered to another for safekeeping or storage. As pointed out above, the statutes in this state are uniform in providing for the reasonable costs incurred by bailees, warehousemen and other persons who render services in connection with the storage or preservation of personal property where a fixed compensation has not been agreed upon, in their provisions for a lien for such services, and in providing for the sale of the property to satisfy such lien. (See Com. Code, §§ 7209, 7210; Civ. Code, §§ 1853, 1856, 1857, 2081, 3051, 2872 et seq.; and see *Shedoudy* v. *Spreckels Brothers etc. Co.,* 9 Cal.App. 398, 401 [99 P. 535].) Accordingly, we do not perceive that California has denied tenants whose property is stored because they are unable to remove it from the premises restored to a landlord the same protection of the laws which is enjoyed by other persons or other classes in like circumstances. Since the state has not provided for differences we need not determine, under the rationale of *In re Antazo, supra,* 3 Cal.3d 100, 110-111, whether California has a compelling interest which justifies the storage and safekeeping provisions of section 1174. Assuming, arguendo, that such differences do exist, it appears to us that California has a compelling interest which justifies the storage provisions of section 1174. These provisions provide a practical solution of a problem which has been a troublesome one for the Legislature. It resolves the problem in a manner more efficacious than the alternatives of putting the tenant's property out in the street, or storing it at the state's expense, subject to redemption or by direct subsidy. The latter alternative, in turn, raises the constitutional question whether such storage constitutes a gift of public funds. (Cal. Const., art. XIII, § 25.)

■ We turn now to the second aspect of the statute providing for redemption of the tenant's personal property within 30 days by payment of the judgment for rents and damages in the unlawful detainer action and the application of the proceeds from the sale of said property to the said judgment if the property is not redeemed within the 30-day period. In its operation this portion of section 1174 permits a judgment creditor to apply property in satisfaction of his judgment in a manner which circumvents the statutes providing for writs of execution. (See § 681 et seq.) This circumvention prevents the tenant judgment debtor from asserting his claim for exemption and enables the landlord creditor to reach property which would otherwise be exempt from execution in satisfaction of his judgment. ■ We observe here that in this state

there is a strong public policy favoring exemption statutes since they are designed to save debtors from want by reason of misfortune or their improvidence. (*Estate of Millington,* 63 Cal.App. 498, 500-501 [218 P. 1022]; *Bertozzi* v. *Swisher,* 27 Cal.App.2d 739, 742 [81 P.2d 1016]; *Holmes* v. *Marshall,* 145 Cal. 777, 778-779 [79 P. 534].)

 The provisions in section 1174 for the satisfaction of the judgment obtained in the unlawful detainer action are not based on reasonable legislation but find their support in arbitrary action. There appears to be no rational justification for allowing a landlord creditor to reach property which nonlandlord creditors cannot reach because of the exemption statutes, since, in contemplation of law, the landlord creditor enjoys no status superior to a nonlandlord creditor. Each holds a judgment for money for the satisfaction of which both look to the debtor's sundry property. Moreover, these provisions do not have any real or substantial relation to the object sought to be obtained by section 1174. That object is the restitution of the premises to the landlord, not the satisfaction of his money judgment. It is well settled in this state that a judgment for rents and damages is only incidental to the main purpose of the unlawful detainer action which is the recovery of possession of the premises. (*Mihans* v. *Municipal Court, supra,* 7 Cal.App.3d 479, 489; *Markham* v. *Fralick, supra,* 2 Cal.2d 221, 226-227; *Arnold* v. *Krigbaum, supra,* 169 Cal. 143, 146.) In sum, in light of the public policy favoring exemption statutes and the clear objective of section 1174, the portions of that statute which provide that the tenant debtor satisfy the money judgment before he can redeem his personal property, or which subjects the proceeds of the sale of that property to the satisfaction of the judgment when the property is not redeemed within the 30-day period, appear to us to violate substantive due process since they offend the basic concept of "fair play," the essence of due process. (See *Galvan* v. *Press, supra,* 347 U.S. 522, 530; *Mihans* v. *Municipal Court, supra,* 7 Cal.App.3d 479, 484.)

 We perceive, too, that the second aspect of section 1174 also offends procedural due process since it deprives the tenant debtor of the opportunity to dispute the landlord creditor's claim that his money judgment be satisfied out of the tenant's property in the landlord's possession. The tenant debtor is afforded no hearing on the question whether the landlord creditor is entitled to withhold and deprive the tenant of his property which public policy, as reflected in the exemption statutes, has declared to be exempt from execution. Such deprivation violates the fundamental principles of procedural due process because the procedure adopted for the enforcement of execution of the judgment does not pre-

serve the essential rights of the tenant debtor. (See *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337, 340-342 [23 L.Ed.2d 349, 353-354, 89 S.Ct. 1820].)

The second aspect of section 1174, under discussion, also deprives tenant debtors of the equal protection of the laws enjoyed by other debtors in like circumstances. Its result amounts to an invidious discrimination. Tenant debtors whose property has not been stored by the landlord upon restitution of the premises, as well as other nontenant debtors, may resist the application of their furniture and furnishings to the satisfaction of a money judgment by claiming the exemption provided by the execution of judgment statutes. Tenant debtors whose property has been stored as provided in section 1174 may not. As already pointed out, the concept of equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purposes of the law receive like treatment. Here, like treatment is not afforded to debtors against whom there is a money judgment. The legislative classification made by section 1174 is a "suspect classification." Accordingly, in order to justify it there must exist a *compelling* interest and a *necessity* furthering the statutory purpose. (See *In re Antazo, supra,* 3 Cal.3d 100, 110-111, and cases there cited.) We do not perceive a compelling interest which justifies the second aspect of section 1174; nor do we apprehend that the distinctions drawn by it are necessary to further the purpose of section 1174. That purpose, as we have already pointed out, is to restore the landlord to his premises by permitting him to store the tenant's property and to reimbursement for the storage charges.

Our conclusion that the second aspect of section 1174, under discussion, is unconstitutional, does not necessarily invalidate the entire statute or all of the portion under attack. The parts deemed not to be unconstitutional may be preserved if they can be separated from the unconstitutional part without destroying the statutory scheme or purpose. (*People* v. *McCaughan,* 49 Cal.2d 409, 416 [317 P.2d 974]; *Danskin* v. *San Diego Unified Sch. Dist.,* 28 Cal.2d 536, 555 [171 P.2d 885].) Here the unconstitutional provisions relating to the satisfaction of the money judgment are severable from the constitutional provisions relating to storage and do not vitiate the whole statute. The dominant purposes of section 1174 dealing with the storage of the tenant's property can be effected by eliminating the severable unconstitutional provisions. Upon such elimination the constitutional provisions retain substantial integrity so as to stand alone and remain in force.

## Class Actions

 Plaintiffs and petitioner have proceeded by way of a class action. Respondents suggest that class actions are improper. In considering the respective contentions we first observe that section 382 provides that when a question of common or general interest arises in relation to persons so numerous as to be impracticable to bring them all before the court, one or more persons may sue on behalf of all such persons.

 Class actions are predicated on practical necessity and paramount convenience (*Daar* v. *Yellow Cab Co.*, 67 Cal.2d 695, 703-704 [63 Cal.Rptr. 724, 433 P.2d 732]; *Weaver* v. *Pasadena Tournament of Roses*, 32 Cal.2d 833, 837 [198 P.2d 544]; *Chance* v. *Superior Court*, 58 Cal.2d 275, 291 [23 Cal.Rptr. 761, 373 P.2d 849]) and require (1) an ascertainable class and (2) a well-defined community of interest in questions of law and fact. (*Daar* v. *Yellow Cab Co., supra,* at p. 704; *Chance* v. *Superior Court, supra,* at p. 286.) There is an ascertainable class where individuals, not necessarily expressly known, stand in equivalent legal and factual position to the representative party. (See *Daar* v. *Yellow Cab Co., supra,* at pp. 704-706; *Weaver* v. *Pasadena Tournament of Roses, supra,* at pp. 842-843.) There is a community of interest when each member can rely on adequate representation on equivalent facts and questions of law. (See *Daar* v. *Yellow Cab Co., supra,* at p. 710; *Bowles* v. *Superior Court,* 44 Cal.2d 574, 587 [283 P.2d 704]; *Chance* v. *Superior Court, supra,* at p. 288.)

 Here, both plaintiffs and petitioner purported to sue on behalf of all similarly situated persons. Evicted tenants whose personal property has been placed in storage pursuant to a writ of possession and who claim that such property is exempt from execution under section 690 constitute an ascertainable class. Such persons also have a well-defined community of interest in the questions of law whether the statutory exemption is good as against the procedures provided for in section 1174 and whether those procedures are constitutional. Accordingly, we conclude that the class actions were proper.

## Conclusion

 In *Gray* v. *Whitmore* it appears that issue was tendered only as between plaintiffs and defendant sheriff. Defendant landlord, Key Property Management, although named as a defendant, was not a party to the proceedings, nor is it a party to this appeal. All of the essential allegations of the petition for writ of mandate were denied in the answer of the sheriff except that the sheriff admitted that he evicted plaintiffs

from their possession of the described real property pursuant to the writ of execution on July 11, 1969; that he took an inventory of plaintiffs' personal property; that on July 11, 1969, he entrusted said property to Key Property Management; and that plaintiffs filed a claim of exemption which he refused to accept for filing. Although it appears that, by failing to answer, defendant sheriff admitted an allegation in plaintiffs' petition that the sheriff had wrongfully deprived plaintiffs of their right to the possession of plaintiffs' personal property, it appears that this issue was tendered in the proceedings and that the sheriff was maintaining that he merely complied with the provisions of section 1174 when he entrusted the property to the landlord. The record reveals that as between plaintiffs and the sheriff the issue before the court at the hearing was whether the sheriff was obliged to process the claim of exemption filed by plaintiffs. In conjunction with this issue the parties argued the interpretation and constitutionality of section 1174. No other evidence was adduced and the issue was determined on the basis of the pleadings and the memoranda of points and authorities.[8] Since plaintiffs were not entitled to any of the relief prayed for against the sheriff, in the light of the principles enunciated in this opinion, the trial court was justified in denying the application for a preliminary injunction and the peremptory writ.[9]

In *Dionio* v. *Carberry* the procedural circumstances were essentially the same as in *Gray* v. *Whitmore*. The landlord, although named as a defendant, was not a party to the proceedings nor is he a party on this appeal. As against the sheriff the action sought to compel him to entertain the claim of exemption filed by plaintiff. The sheriff admitted receipt of the claim but denied that he was required to honor the same and, essentially, denied all the other material allegations of plaintiff's petition. No other pertinent evidence was required and it is clear from the record that the issues tendered by the petitioner and application for a preliminary injunction, insofar as the sheriff was concerned, turned

---

[8] We observe that in a declaration filed by plaintiffs in support of the motion for preliminary injunction it is alleged that the landlord threatened to sell the subject property on August 1, 1969, unless a stay was granted. This declaration was not concerned with any conduct of the sheriff and it appears that the requested stay was granted.

[9] The argument has been made in the *Gray* case that the sheriff refused to permit plaintiffs to remove the property during the five-day period following the service of the writ of restitution. The record does not support this contention and we may not judicially notice, as urged by plaintiffs, that *all* sheriffs in the Bay Area prevented the removal of the tenant's property during such period. This is not a fact of generalized knowledge that is so universally known that it cannot reasonably be the subject of dispute. (See Evid. Code, § 451.) Moreover, the trial court was not requested to take such notice. (See Evid. Code, §§ 452, 453.) As we have pointed out in this opinion, a tenant has the right to remove his property during the five-day period and if a sheriff prevents him from doing so the law affords him a remedy.

on whether the sheriff was required to entertain and process plaintiff's claim of exemption. A declaration by plaintiff, aside from alleging her indigent circumstances, alleges that she was evicted from the premises on March 18, 1970, and that the sheriff refused to permit her "to pack a suitcase with the children's clothes or pick up their toothbrushes." A counterdeclaration by the sheriff states that plaintiff was evicted on March 18, 1970, following the service of a previous notice as required by section 1174.[10] This declaration states that the sheriff did not take possession of plaintiff's property but merely inventoried the same and left it on the premises in the custody of the plaintiff landlord as required by section 1174. Since the trial court denied the relief prayed for by plaintiff it is apparent that the conflicts in the declarations were resolved in favor of the sheriff. In view of the principles herein discussed plaintiff was not entitled to any relief prayed for against the sheriff and the trial court was justified in denying a peremptory writ of mandate and the preliminary injunction.

In *Bryson* v. *Carberry* issue was tendered both as against the sheriff and the landlord. Pursuant to the alternative writ of mandate the sheriff was directed to show cause why he should not process petitioner's claim of exemption and of those similarly situated and the landlord, Joseph Moalem, the real party in interest, was directed to show cause why he should not release petitioner's property turned over to him by the sheriff. The sheriff's return asserts that he removed petitioner from the premises pursuant to a writ of possession and placed the landlord in possession; that he caused an inventory to be made of petitioner's property on the premises and that he entrusted the possession of such property to the landlord. The sheriff admits receipt of the claim of exemption and that he refuses to entertain or process the same because he has not levied on the property and he has no control or possession of the property. Moalem, in his return, admits that he has possession of petitioner's property; that he holds the same pursuant to the judgment and writ of possession in the unlawful detainer action; that since petitioner did not remove her property from the premises upon receiving the five-day notice, a lien attached upon such property pursuant to section 1174 for storage costs and Moalem's judgment; and that such lien supersedes any rights that petitioner may have under the exemption statutes.

The returns of the sheriff and the landlord in *Bryson* raise only questions of law. We observe that where the petition and the answer are submitted without evidence the allegations of the answer which are

---

[10]The record does not disclose when the notice was served on plaintiff but it does indicate that the writ of possession was received on March 6, 1970 and that he thereafter served plaintiff herein with a five-day notice to vacate the premises.

not controverted must be taken as true. (§ 1091; *Ertman* v. *Municipal Court,* 68 Cal.App.2d 143, 149 [155 P.2d 908, 156 P.2d 940]; *Friedland* v. *Superior Court,* 67 Cal.App.2d 619, 623 [155 P.2d 90]; *Hunt* v. *Mayor & Council of Riverside,* 31 Cal.2d 619, 623 [191 P.2d 426].) In the instant proceeding the allegations in the respective answers were not controverted. Accordingly, in the light of the principles hereinabove discussed, plaintiff is not entitled to any relief prayed for against the sheriff. The landlord, notwithstanding that the allegations of his return are uncontroverted, is not entitled to prevail on issues which are rendered infirm because of unconstitutionality. Under the principles hereinabove discussed Moalem is entitled to the possession of the tenant's property for purposes of storage pursuant to section 1174 and he is entitled to sell the same for the purpose of reimbursement of such costs if it is not redeemed as provided in section 1174 and as that section has been interpreted by this court. He does not, however, either pursuant to the judgment or the writ of possession, possess the subject property subject to a lien for the satisfaction of his money judgment, nor may he apply any of the proceeds realized from the sale of said property for the satisfaction of storage costs to said judgment.

The judgment in *Gray* v. *Whitmore* (1 Civ. 27565) is affirmed.

The judgment in *Dionio* v. *Carberry* (1 Civ. 28540) is affirmed.

In *Bryson* v. *Carberry* (1 Civ. 28319) the alternative writ of mandate directed to the sheriff is discharged and the petition is denied. With respect to Moalem, petitioner is not entitled to the complete relief sought, but to relief limited in its scope. Petitioner is entitled to a writ of mandate directing Moalem to: (1) refrain from demanding or requiring, as a condition of the redemption provided for in section 1174, that petitioner pay the judgment in Moalem's favor obtained in *Moalem* v. *Bryson,* No. 641169, in the Municipal Court of the City and County of San Francisco; and (2) refrain from applying in payment of said judgment any proceeds remaining from the money realized from the sale, if any, of petitioner's personal property to satisfy Moalem's costs in storing and selling such property. Petitioner is not entitled to a writ of mandate under the rationale of this opinion with respect to the other grounds for relief. As to these grounds, the petition is denied and the alternative writ is discharged. Let the writ issue accordingly. Petitioner shall not recover any of her costs from Moalem and Moalem shall not recover any of his costs from petitioner.

Sims, J., and Elkington, J., concurred.

The petition of the appellants in Nos. 27565 and 28540 and petitioner in No. 28319 for a hearing by the Supreme Court was denied June 17, 1971.